**Harmer v. Harmer**

C.P. of Montgomery County, no. 94-06967.

*William I. English Jr.,* for plaintiff Harmer.
*John H. Martin III,* for defendant Harmer.

ALBRIGHT, *J.,* February 5, 1997—

## FACTS AND PROCEDURAL HISTORY

On July 20, 1992, the parties entered into a property settlement agreement, and said agreement was subsequently incorporated into a decree divorcing the parties, effective September 10, 1992. With regard to support for their two children, the parties agreed as follows:

*"Child Support/College Expenses for Children*

"(11) Husband agrees to pay to Wife the amount of $300 per week as child support for the parties' two minor children: JOHN K. HARMER, age 16, born May 20, 1975; and KATHERINE P. HARMER, age 14, born December 20, 1977. Husband's obligation will continue until child attains the age of 18 and graduates from high school.

"If the child shall enroll as a full-time student at an accredited college or university, Husband agrees to continue the support at the rate of $150 per week per child, until such time as the child graduates from college.

"(12) Husband and Wife shall share the expense of college tuition and costs. Husband shall pay fifty percent of such expense and Wife shall pay fifty percent of such expense."

On February 18, 1993, after defendant's alleged failure to make the aforementioned child support payments, plaintiff filed a complaint for support, in which she specifically referenced the parties' property settlement agreement and sought to receive the monies which were due thereunder. One month later, on March 18, 1993, plaintiff filed a petition for enforcement of the parties' property settlement agreement, and following a conference with the parties' respective attorneys, this court entered an order on June 11, 1993, in which the parties agreed, in pertinent part, that (1) defendant's obligation for child support would be reduced from $300 to $210 per week, and (2) all other terms of the parties' property settlement agreement would remain in effect. On August 23, 1993, this court entered a support order consistent with the parties' agreed order of June 11, 1993.

On August 4, 1993, following John K. Harmer's graduation from high school, defendant filed a petition to modify support, and on April 14, 1994, this court entered an order approving the support conciliator's recommendation that defendant's petition be denied, as "[t]here has been no significant change of circumstances since the earlier order of June 11, 1993 which was reaffirmed by order of August 23, 1993." Defendant filed exceptions to the support conciliator's recommendations, and, following oral argument, an order was entered on August 22, 1994, wherein the court found that the order of June 11, 1993 and the parties' property settlement agreement were still controlling with regard to the parties' child support obligations.

Defendant then filed another petition to modify support in June 1995, after Katherine's graduation from high school, in response to which the parties, on September 7, 1995, agreed that: (1) support for John K. should be terminated since he had withdrawn from col-

lege; and, (2) as memorialized in an order dated September 7, 1995, defendant would pay $125 per week for the support of Katherine, allocated as "$105 support *pursuant to the p.s.a.* [property settlement agreement] and $20 college expenses."

On December 28, 1995, defendant filed a petition to vacate support as to Katherine, based upon the Supreme Court's decision in *Curtis v. Kline,* 542 Pa. 249, 666 A.2d 265 (1995). Shortly thereafter, on January 16, 1996, plaintiff filed a petition to recover counsel fees and expenses that were allegedly incurred while enforcing the terms of the property settlement agreement. On March 26, 1996, this court entered an order approving the following recommendation of the support conciliator:

"Defendant's petition to vacate of December 28, 1995 is denied. The support terms of the parties' property settlement agreement of July 20, 1992 remain enforceable through the existing domestic relations order."

Defendant filed exceptions to this recommendation, and, following a hearing before the undersigned on July 22, 1996, this court entered an order, dated September 19, 1996, denying defendant's petition to vacate order of support and directing defendant to reimburse plaintiff for $1,500 in counsel fees.

On October 3, 1996, defendant filed a motion for reconsideration of this court's order of September 19, 1996, and, upon consideration of said motion, this court entered an order on October 11, 1996, affirming its denial of defendant's petition to vacate, but reversing the former finding that plaintiff was entitled to counsel fees. From the order of October 11, 1996, defendant has taken the instant appeal, and, in his statement of

matters complained of on appeal, raises the following issues:

(1) Did plaintiff's filing of a complaint for support constitute a waiver of her right to enforce the child support provisions contained in the parties' property settlement agreement?

(2) Did the trial court err by not holding that *Curtis v. Kline, supra,* eliminated defendant's contractual obligation to contribute to the post-secondary education support of his children?

## DISCUSSION

### I. *The Trial Court Properly Enforced the Parties' Property Settlement Agreement*

On appeal, defendant argues that by filing a complaint for support on February 18, 1993, plaintiff has waived her right to enforce the terms of the property settlement agreement, and more specifically, defendant's agreement to provide post-secondary education expenses for the children. As support for this argument, defendant cites the Supreme Court's decision in *Knorr v. Knorr,* 527 Pa. 83, 588 A.2d 503 (1991).

In that case, the parties also had a property settlement agreement outlining their respective child support obligations, and, upon the husband's failure to make required payments, the wife filed a complaint for support. As a result, an order was entered, by consent of the parties, in which the court merely directed the husband to pay what was required of him under the agreement. Thereafter, the wife filed a petition to increase the support order, the husband filed a petition to reduce the order, and ultimately, the Supreme Court had to decide

the extent to which the court was bound by the parties' property settlement agreement.

Initially, citing *Sonder v. Sonder,* 378 Pa. Super. 474, 549 A.2d 155 (1988), the Supreme Court noted that, even when agreements regarding child support are incorporated, but not merged, into a final divorce decree, "visitation and custody matters would be enforced according to the best interests of the child and that as with support orders, only advisory effect would be given to the agreement but without binding effect on the court *when it is not in the best interest of the child." Knorr, supra* at 86, 588 A.2d at 504. (emphasis added)

The court then went on to state that, while parties to a divorce had the right to bargain between themselves, such parties "cannot in that process set a standard that will leave their children short. Their bargain may be eminently fair, give all that the children might require and be enforceable because it is fair. *When it gives less than required or less than can be given to provide for the best interest of the children, it falls under the jurisdiction of the court's wide and necessary powers to provide for that best interest." Id.* at 86, 588 A.2d at 505. (emphasis added)

Ever cognizant of the Supreme Court's reasoning in *Knorr,* it is clear that, even if the plaintiff had waived her right to strictly enforce the parties' property settlement agreement, which this court does not believe is the case, it was altogether proper to compel the parties' compliance with the terms of their child support arrangement, as said arrangement was certainly in the best interests of the children.

Furthermore, this court has found no evidence of record which indicates that either party intended, at any point, to forsake the terms of their agreement. While plaintiff did file a complaint for support, at no time

did she attempt to deny the existence or enforceability of the parties' property settlement agreement, as she specifically referred to said agreement within her complaint, and sought to recover only the amount which defendant was obligated to pay thereunder. In addition, *subsequent* to the filing of the complaint, and as a result of plaintiff's petition for enforcement of the property settlement agreement, both parties *agreed* that, other than a slight reduction in defendant's child support payments, "[a]ll other terms of the property settlement agreement entered into between the parties on July 20, 1992, incorporated into the divorce decree on September 10, 1992, shall remain in effect." This intention was then reinforced within each of the subsequent orders entered in this case, wherein the court made reference to and specifically enforced the child support provisions which were outlined in the parties' property settlement agreement. Thus, in light of the foregoing, this court rejects defendant's argument of an alleged waiver as both meritless and entirely inconsistent with the conduct of the parties.

## II. *The Trial Court Properly Found That* Curtis v. Kline *Did Not Affect Defendant's Contractual Obligation To Contribute to the Post-Secondary Education Support of His Children*

In *Curtis v. Kline, supra,* the Supreme Court held that Act 62 of 1993 (23 Pa.C.S. §4327), which required divorced, separated, or unmarried parents to provide post-secondary education support for their adult children, was unconstitutional. In reviewing "the Act's creation of a duty and more significantly a legal mechanism for enforcement of that duty," the court specifically found that Act 62 violated the equal protection clause of the Fourteenth Amendment, classifying "young

adults according to the marital status of their parents, establishing for one group an action to obtain a benefit enforceable by court order that is not available to the other group." *Id.* at 258, 666 A.2d at 269.

In the instant case, defendant argues that the Supreme Court's decision to strike down the duty created by Act 62 somehow absolves him of his own *contractual* obligation to provide post-secondary education support for the parties' children. This court disagrees. While the Supreme Court clearly held that divorced, separated, or unmarried parents may no longer be *statutorily*-required to provide post-secondary education support for their adult children, it gave no indication that the decision was also intended to invalidate every voluntarily-assumed child support arrangement involving the payment of post-secondary education expenses. In fact, in its holding, the Supreme Court expressly stated that *"[i]n the absence of an entitlement on the part of any individual to post-secondary education, . . .* we perceive no rational basis for the state government to provide only certain adult citizens with legal means to overcome the difficulties they encounter in pursuing that end." *Id.* at 258-59, 666 A.2d at 269-70. (emphasis added) (footnote omitted)

Certainly, an entitlement in the instant case arises from the plain language of the parties' property settlement agreement, and, as stated by the Supreme Court in *Simeone v. Simeone,* 525 Pa. 392, 400, 581 A.2d 162, 165 (1990), "[a]bsent fraud, misrepresentation, or duress, spouses should be bound by the terms of their agreements."

Accordingly, for all of the foregoing reasons, defendant's appeal is without merit, and this court's order of October 11, 1996 should be affirmed.